All right, sir, you may come on up. Good morning. If it pleases the court, my name is Michael Esmeyer. I'm here on behalf of the appellants, Robert Haas and Century Equities and Century Holding. First off, let me just say I appreciate the opportunity to actually present our client's argument here in the Fifth Circuit. So I'll get into it. So briefly on the facts, I mean, this is a insurance, a single premium insurance contract, which means there's only one premium. He paid it at the very beginning. When he turned 40 in 1988, he put down a sum of money and entered into an insurance policy. He was looking, Mr. Haas was looking for something that would allow him to take out loans against and would have a death kicker. At the time that he contracted with the insurer, he was promised a 7.75% interest on the initial premium and then 6% thereafter. The contract reflects that, and the contract actually abided by that throughout the years. A couple of times it went under that, but it's the evidence we believe shows that during the time that it went down below 6%, there was actually a loan out on the contract. Anyways, in 2020, Allstate issued a letter to our client stating that it went from 6% to 4% due to unfavorable market conditions. Our client was not happy with this, understandably. He sent Allstate a letter arguing about that. They sent back a letter. It ended up in Harris County, and then it got removed to federal court. The appellate Allstate filed a motion to dismiss on a 12B1 and a 12B6 basis. Both of those were denied by Judge Hoyt on ROA 227. And then the appellants filed a motion for summary judgment on breach of contract, which I believe was pending. And then Allstate filed a motion for ‑‑ Only a partial summary judgment was pending. Yes, ma'am. Yes, Your Honor. The appellant files a partial summary judgment, and then the court dismisses the whole case after that? Well, the appellees ‑‑ Did the appellee ever file for a full summary judgment? They did, Your Honor. They filed for a full summary judgment on December 20, 2021. It was right before the holidays, so all the parties got together, and we asked them, and they agreed to an unopposed motion for a continuance to reply to that summary judgment. That unopposed motion for continuance was filed on the 3rd of January ‑‑ was it this year? This year. Nine days later, the court came back and granted a ‑‑ well, first of all, denied the appellant's summary judgment, and in the same order granted for the appellees a summary judgment on all the issues, breach of contract and the noncontractual claims. Did that mean that the court was denying the motion for continuance somehow? I assume so, Your Honor. It effectively did the same thing, so ‑‑ But there was ‑‑ what's the situation on the response to the summary judgment? I do not believe the response time had come up at that point. It's not yet 21 ‑‑ it's not enough time for the court to rule on the summary judgment. If, assuming argument, though, and I'm not foreshadowing, we believed you should have had a chance to respond to the summary judgment before it was granted, do you actually have anything to respond, or would you get poured out anyway? Can you help with that? And did you go back to the district court and say, hey, wait, we didn't have a chance to respond. We needed ‑‑ this is an error. It looks like we just filed for an ‑‑ If you don't mind, this is a substantive, this is just procedural. I mean, obviously, I want to hear the answer to Judge Elrod's question. I just want to be clear on who filed a motion for a summary judgment. Both sides, Your Honor. Ours was a partial ‑‑ And what happened, you can just tell me, and what happened to yours? Ours got denied by the same order that dismissed the entire case. Okay. And then Allstate filed one. Allstate filed one on the 20th of 21. Okay. And then what happened to that one? Nothing, Your Honor. We were waiting to ‑‑ there was ‑‑ I'm not sure if a hearing was set, but we were waiting for a hearing and a chance to reply to it. We had filed a motion for continuance, and none opposed. Okay. So did you say a motion for a summary judgment was ultimately granted by the court? In our opinion, yes, Your Honor. What motion was that that was granted? It wasn't a motion. It was a sua sponte, without notice, by the court's own hand, granting dismissal of the case. I thought you said a minute ago that the court was granting the summary judgment and denying the continuance explicitly. Then I misspoke. What I meant to say was that the summary judgment was granted. It was a grant of summary judgment in favor of the appellees, but it wasn't their summary judgment that was granted. But was it based upon the grounds that they argued in their motion? They argued a lot of grounds, Your Honor. But he denied it on the merits. I mean, he denied it on the merits. He goes through all the allegations about the breach. Let's back up here. I mean, this deal was filed, the letter was filed in May of 2020. They removed it. Okay, so they removed it in January of 2021. We're talking about a year passed on a breach of contract matter that's pending in front of the district court. All state moved to dismiss it, 12B1. The court denied that. In March of 21, denied their dismissal on the face of it. It's all still in court. In October, the plaintiff moved for summary judgment on the breach of contract. So we're talking about from October to January before there's a ruling. He wants to put in the two experts. He put the court on notice. He wanted these experts to come in in October.  So it's not like the judge did not address that and was unaware that that was what put forth. All state moves in December for this full motion for summary judgment. Okay. Unopposed continues. So what? Just because the parties didn't oppose it, you're arguing the judge had to grant it? No, Your Honor. What we're arguing is that we never got to grant it. He doesn't say anything in his ruling about the content. I'm just trying to get the import of this because in reading the briefs it makes it sound like, well, we filed this continuance and somehow that's supposed to stop the action. I'm not usurping the other questions that have been asked, but if we don't get chronologically what happens here, this is not like this thing was filed yesterday and two days later the court issues a ruling. And it's this characterization of something being sua sponte, which is a term of art, on something that's on the court's docket for a flat year with both sides putting everything together. So I'm trying to get my head around how the judge, or why I'm supposed to have a minute entry saying you get a hearing, which is extraordinary in and of itself, on a breach of contract claim. So I'm trying to find, unless it's the notice piece, I'm not trying to presage my thoughts here, but I'm trying to figure where this breach of procedure by the judge is not to say you get a hearing and all this stuff, something that's sitting on the docket. Most people complain because the judge takes too long to decide stuff. So he gets a ruling here. Anyway, that wasn't meant to be a sermonette, but I'm just trying to, these terms of art about sua sponte rulings, when stuff has been filed fully, positions put there, and sitting in the spot of the trial judge. But I'm really coming back to the question my colleague asked you. Is a do-over likely to result in this judge, who considered experts, changing his mind on the merits of what he decided here? So the end of my sermonette is what I ask frequently. What is the relief you want from the panel? And that's a serious question, because cutting through all this, I'm trying to figure out what is the relief? Are you asking us to vacate this because of insufficient notice? And if so, give the case that says we do that. Are you asking for a remand? I just need to be clear so then I can understand the answers to my colleague's questions. Sure. Simply, we want a remand so we get a chance. It's not a do-over. We never got a chance to respond to their motion for summary judgment. We have summary judgment evidence that was not entered into the record. You file your own summary judgment. He knows what your client's position is. And the main thing is he wants to put experts on on the question of whether there's a breach of contract and the parameters of this insurance. And the judge says in his order, experts are not needed. You don't have a case that says he's required to let you put experts on to interpret a breach of contract. Surely that's not in what the papers you file, is it? Or is that the position you take? Well, we do have a position that the experts are needed, even in an unambiguous contract, when there's industry terms that need to be defined by experts. So in his ruling, he denied that. So that's reversible error, we're going to say, and an abuse of discretion standard. He abused his discretion by not letting you put experts in on this contract matter, notwithstanding the viability of your argument. Your Honor, my understanding is it's the de novo standard based on the fact that it was the motion. Invisibility of evidence, that's an abuse of discretion. Okay. Isn't it? You asked to put experts on the contract thing. And my problem with this initially is thinking he never says anything about these experts so he didn't get did. He comments on it. Anyway, I have no more questions. I'm going to leave it alone. Because I'm just trying to figure out what relief you want. You know, to continue us to find more answers to what the other side said on something that sat on the docket, you know, for a flat year. I'm just trying to get where the grievance is here. You're all the way in the Fifth Circuit. Anyway, go ahead. Well, it gets down to our this-is-not-harmless-error argument, Your Honor. The 10-day requirement on Rule 56F is strictly enforced. I mean, it's been strictly enforced since what, Leatherman in 94? Was it Leatherman? 10-day. 10-day notice. That you didn't notice that he was going to rule. Yes, ma'am. Yes, Your Honor. Correct. But Judge Stewart's question asked, didn't you already meet the summary judgment by having your own motion? And everything that's in your own motion is all that you were going to say, and you don't have anything else anyway. But we do have evidentiary things to include in the reply. I mean, they're making arguments that we didn't make. What? We have . . . You have evidentiary facts included. What would that be? We have evidence of other people lodging similar complaints against the Texas Department of Insurance. We have expert . . . You say similar. Specifically, what's the nature of the other complaints? That they're lowering the interest rate on premiums when they're not supposed to be, Your Honor. And we have . . . Lowering the interest rate on premiums? On the premiums of the insurance contract, yes, sir. Like the 6 to 4? The 6 to 4 percent, yes, sir. But don't they say it could drop to 4 but no lower than 4? No, what the contract says, the contract explicitly says that it is a 7.75 percent initially and then 6 percent thereafter. The boilerplate language in the back says 4 percent, but that boilerplate language is put in, in my opinion, simply to satisfy the Federal requirement for insurance contracts that has to have a 4 percent minimum contract interest rate, Your Honor. So it doesn't mean what it says is put in there for another reason, because what it says is it can go down to 4 percent. You agree that's what it says? I do. You're just saying it doesn't mean what it says. No, I'm saying that it says two things, and both things are reasonable interpretations, and that in itself creates an ambiguity. The judge just disagreed with you. Yes, Your Honor. And it happens all the time. And I'm just still stuck on you filed a full Mowery collection pass. When we get these 10-day rules, sua sponte, whatever, somebody just gets hit between the eyes. I mean literally hit between the eyes. Judge just all of a sudden enters summary judgment, whoa, what happened? No notice, there's no other motions filed, et cetera. I'm not saying that's the only one, but a judge just suddenly on his or her own enters the summary judgment. I'm still having trouble contextually where both sides have filed fully motions for summary judgments representing their side. I understand you say yours was a partial motion, but in response to Judge Gray's, I'm still trying to figure out . . . I mean you're talking about wanting to put stuff about other lawsuits, but I mean as it relates to this, the issues are joined, in my view, in front of the court. And I'm trying to fit that within the context. And I'm going to let the clerk give you two more minutes, because I've taken up two of them, so I'm not trying to be unfair. But I'm trying to put this in the context of our 10-day rule. Let's go back when we've got these fully joined, for the most part, motions that are sitting there for a year. The judge doesn't have to telegraph, I'm going to rule. I'm just having a hard time with that. And at some time, at some point, give me the best case where we've reversed something in this kind of a context, where there's nothing pending other than the case where the judge just does it. You already gave it to him, Madam Clerk? All right, I'm sorry. I apologize, but I try to be fair, so you've got some more time to say. I appreciate it. So you stepped on it, and I believe that's the case, is that our summary judgment was only a partial. We put proof solely regarding breach of contract. The non-contractual DTPA violation, the Texas Insurance Code violation, unjust enrichment, and the request for equitable ---- You had a year to put all that stuff in there. But we didn't, Your Honor. Because our reply was solely to the breach of contract. We would have put that in in response to the motion to dismiss those claims or the motion for summary judgment against those claims in the reply, but we never got a chance to reply to the motion. So the motion for continuance you put in there, I need a continuance because I have all these other matters, or it just was a plain, vanilla motion for continuance? If we knew that it was going to be dismissed in its entirety, we probably would have, Your Honor. That's my question. In your motion for continuance, is it just sort of a vanilla motion for continuance, or does it say to the judge part of the reason for the continuance is A, B, C, D, and E? Yes or no? If I had to guess, I'd say no, Your Honor. Can I ask a question? Absolutely. I'm sorry. No, no, no. There was not a motion. The motion for the defendants that was sitting, did that have DTPA summary judgment in it? I believe it included everything, Your Honor. Okay. It was a kitchen sink summary judgment. Yes, Your Honor. Okay. The one you filed was a partial. Yes, Your Honor. So it's your position that you didn't know DTPA summary judgment was coming, even if you might have thought breach of contract summary, and that was fully joined? I think that understates it, Your Honor. Our point is that we never got a chance to reply to it. Even if we knew it was coming, we didn't get a chance to reply to it. You mean respond? Respond, yes, Your Honor. Because reply is filed on the front end, and you don't always get that as a matter of right anyway. Right. So you didn't get to respond to the summary judgment because the time hadn't passed, even if the continuance was going to be denied? Correct, Your Honor. Okay. What's your best case that we're that formal and strict? Well, our best case is, well, first of all, the Fifth Circuit itself has stated that it strictly enforced the 10-day rule. Moreover, I think it's a violation of due process. What's your best case? It's a violation of due process. Not what's your best argument. What's your best case? Name, site? No, not trying to be tricky, but you can't. Leatherman. You've got to answer the question we ask, not the question you wish we had asked, okay? So, you know, you got our attention, so what's your best case? I mean, we're trying to decide the case correctly, so what's your best case? You can't just give us arguments. You've done it. What is your best case? The line of cases, Your Honor, starts with Leatherman. Huh? Leatherman from 94, Fifth Circuit case. Okay. 28 years ago. Sounds good. I also have Ross from 98 and Allen from 94, but those are cases where they actually did it despite the court violating the 10-day simply because in Ross it was an ADA case and the professor had sued individual professors claiming that they violated his ADA rights and it got tossed because of a 12B6 reason despite the fact that the court violated the 10-day rule. And in Allen, all the plaintiff had on record was a non-signed or non-sworn-to affidavit from the attorney. Those are two of the big cases where it was okay that the court violated the 10-day notice requirement. Why are you citing bad cases instead of just sticking with the Leatherman? If those cases went the other way, why would you end with that? To highlight how little they had in those cases, Your Honor. Okay. Whereas you say that you have more and you could defend against the summary judgment. Yes, Your Honor. Although I'm still not clear exactly what you would defend against the summary judgment, but maybe you can address that on the way when you have rebuttal, if you have rebuttal. All right, counsel. One of the reasons that we set cases for oral argument is to have the lawyers address our questions. And so to your audit to the court, we thank you for asking. We know what the case is about. It's not a divorce case. We got it. But we're trying to figure out and discern wherein it is. So thank you for your responses. You've got your rebuttal time. So we'll hear from the other side and you'll get a chance. If there's some other cases over there that you want to tell us, when you come back up, you can do that too. Thank you, Your Honor. All right. Thank you. All right. Ms. Thompson. Thank you, Your Honor. May I please support Elizabeth Lee Thompson on behalf of the Allstate Defendants presenting for all appellees. The crux . . . Let me see if I can get an answer. Yes. Yes, Your Honor. I just want to know if there's any agreement on what the judge ruled on. I don't know whether he granted a motion to dismiss, whether he granted somebody's motion for summary judgment, or whether he sui sponte dismissed the case. Do you know? Your Honor, we have various answers for that, all of which support affirmance of the lower case. Various answers. In other words . . . I don't know either, but it's one of the . . . No, Your Honor, definitely we do know, and that is . . . All right. Yes. What did he? Did he dismiss me like he just sui sponte dismissed the whole case by reading the sentence in the order? What do you think he did? Your Honor, he, first of all, as you know, he dismissed the previous sentence, dismissed the plaintiff's motion for summary judgment. Right. We got that. Moreover, it goes straight into the dismissal. And let me just read it briefly because it goes to my answer. So is it a dismissal? Is it just a straight-up sui sponte dismissal, or is it a summary judgment grant? Your Honor, going back to the Court's earlier discussion with Sentry, there was an earlier 12B1 and 12B6 motion that was filed by Allstate . . . Which were denied, right? Which was denied earlier. Yes, Your Honor. So you think he went back and regranted the dismissal motions from before? Yes, Your Honor. After he had denied them? Is that your answer? That's a whole new thing. Well, actually, it's something that we brought up in our briefing with respect to the fact that we had brought these same motions up . . . excuse me, these same grounds up before. So you don't think he was granting your summary judgment motion? It's kind of dormant there until . . . No, Your Honor. But our argument in our brief, and as I'm glad to go into right now, is that the Court . . . What we would say is that the motion for dismissal, which was earlier filed, 12B1 and 12B6, said these same bases on which he dismissed the case. The Court is aware . . . excuse me, the Court is allowed under Rule 54B to revisit those interlocutory orders at any time during the case, as the Court well knows. There's no need for additional evidence or additional substantive grounds. Under the Austin case that we also cited in our brief, that's the standard. And, therefore, the Court can revise this . . . So it wasn't a summary judgment. It was a revisiting of 12B6 and 12B1. That is our position, Your Honor. But may I also state . . . Why don't you take that position? Judge Lloyd's been around a long time. I mean, on page 4, Analysis and Discussion, a summary judgment should be granted where the evidence presented fails to show a disputed fact. He cites Rule 56. Then he goes through the issues laid out. Then he goes through the contract interpretation. Then he goes through the dissonant invigorants. And then he says, quote, The Court concludes that Sentry's motion for summary judgment is unmeritorious and that it should be denied. Moreover, because the house is still alive, then he says the suit is dismissed. So are those last two lines mutually exclusive? I'm just hung up. He uses summary judgment language in here as opposed to back to the 12B6. That's the first time I heard that today. You know, he went back to the 12B6s. But he doesn't use 12B6 language. He says summary judgment, he cites Rule 56, and he goes through that. So what's up with that? Yes, Your Honor. We did see that. And our argument is, or what came forth there, is that he is considering their motion for summary judgment. I do agree with you that the wording of the motion, excuse me, the opinion does not discuss the motion to dismiss prior to that. But what our argument, excuse me, not your argument, but what occurred is this reconsideration of the prior motions based on the fact that we had these particular grounds before the Court. May I proceed, though, with the other aspects of these that we think are also supported by the record? And that is that if the Court was to consider this to be a sua sponte grant of a motion to dismiss, that that also, in other words, if this was a motion to dismiss standard, that this standard is met. Now, as the Court knows — But that's sua sponte summary judgment. Yes. And, Your Honor, I'm glad to go straight to that if Your Honor would like. The sua sponte motion to dismiss standard is met, but if this is also a sua sponte grant of a motion for summary judgment, that standard also is met. That standard is, and this is under the Amity case that we cited in our brief, the district court may grant summary judgment sua sponte if the party opposing summary judgment has notice. Now, it's also okay, in other words, it's also not error to grant it sua sponte if it's considered harmless if the party opposed has no additional evidence or the Court considers all the evidence and there's no fact issue. Now, may I boil down to what the plaintiff has argued here? They've argued that they did not get a chance to respond to one issue. And, well, in their primary brief, I can get to the extra contractual issue that they raised in the response brief in just a moment. Excuse me, the reply brief. Yes, I can. They didn't get to argue DTPA. Yes, Your Honor. And I'll circle back to the other point. Let me go right to the DTPA. They did not raise until the reply brief the argument that they had no notice that the extra contractual claims were going to be dismissed. And so it's not before the Court, but I'd like to go into it if the Court. We look at it as harmless error. We have to look to see if it was harmful or not. And if it's brand new claims that haven't yet been briefed, it seems like it's hard for you to establish harmless error, which you bear the burden on. Thank you, Your Honor. Yes, well, if I could proceed and say that this was argued extensively in the briefing that is in the record. In other words, this is no surprise that the Court was dismissing these extra contractual claims. Indeed, in the briefing with respect to all states' motion to dismiss, in all states' motion, if I could give the – I'll briefly just give the pages from the record because this argument came up in the reply brief just so the Court has it. On pages 67 and 70, we brought up the fact that the extra contractual claims and contractual claims were subject to dismissal. In Sentry's response to our motion to dismiss on pages 203 to 209, an extensive discussion by the plaintiff with respect to these extra contractual claims and the reasons why they – But they could have brought forth that evidence. Whereas on the motion to dismiss, they couldn't have. But on the motion for summary judgment, they could have attached those other insurance claims with the insurance board or whatever. Yes, Your Honor. They could have attached that, like unfair dealing type complaints. Well, I – perhaps they could. May I say, first of all, that I had not heard of that evidence until he brought that up today at oral argument, that that was the type of evidence that they had. What they did present to the Court were these arguments from a legal perspective. And once the breach of contract claim was decided against their side, all of those extra contractual claims from a legal basis are poured out without regard to the statute. Poured out no matter if they have evidence of – Exactly, Your Honor. Yes. For example, for the statute – Oh, I'm so sorry. I did not mean to be talking over you. No, you go ahead. From a statutory standpoint, for the bad faith and insurance code violations under Texas Supreme Court's Menchaca decision in 2017, if a party that's making these types of statutory violation claims, unless the insured establishes a right to benefit under the policy or an independent injury, there's no basis to a right to the benefits. And therefore, because the only wrong was this alleged setting the interest rate at 4 percent instead of 6 percent, and the Court said there's no basis to that, once there's no basis for benefits there and there hasn't been an independent injury established here, there's no claim. And with respect to the DTPA claim, the only wrong was the alleged setting the interest rate at 4 percent. And as we said, that wrong was decided against them by the Court. So there's from a legal basis no DTPA claim.  That's harmless error. Yes, Your Honor. Well, it is harmless error if it is error. If it were summary judgment it's harmless error, but you think it's motion to dismiss and so it wasn't error at all. I think that we're covered on both fronts, Your Honor, yes. And with respect to the prompt payment, just to round it out, and bad faith claims, those require a claim under the policy, and there's no claim that's been made here. Mr. Haas is still alive and so forth. So for all these reasons, the Court did not err in granting dismissal to Allstate at this point because of all these legal bases. If the Court would, I would like to circle back to the interpretation of the policy unless there are further questions on that other point. Well, let me just ask you a quick question. The counsel opposite says he filed the motion for continuance and it was unopposed. What was your understanding of the basis for the continuance? My understanding was that they desired more time, Your Honor. I did not see any particular basis, and my remembrance of the record is there's not any particular basis stated in the continuance, but the fact that they desired more time and we were unopposed. But the Court proceeded to make its ruling. So there's three aspects that I'd like to talk to the Court about today because on the basis that our position is that the Court was correct and should be affirmed on the fact that it construed the policy to unambiguously provide a 4% interest rate that could be set by Allstate. As a result, it correctly dismissed the plaintiff's motion for summary judgment and dismissed all claims and dismissed both the contractual and extra-contractual claims. As we've already discussed, the fact that the Court correctly dismissed these claims and the fact that it correctly dismissed extra-contractual claims, if I might, I'd like to circle back to what was going to be my first point, but I'm glad to address it now, with respect to how the Court correctly construed the policy. Now, this is a policy that, of course, falls under Texas law, and so we look to the Texas law of contract construction to see whether the Court correctly construed it here. Now, what Sentry's proposed construction not only is inconsistent, but it also goes against Texas law of contract construction. So as the Court knows, under Texas law, a court must construe the contract under the plain meaning this is under the PRIMO decision 2017, Texas Supreme Court, and that it must look at the party's intent according to the plain language that they used. A contract is not ambiguous if it has a clear and definite meaning, and the Court looks at the ordinary and generally accepted meaning and, importantly, construes the contract so that no provision is rendered meaningless. Now, there's three provisions that are particularly at issue here, and two of them are under the section entitled cash values. This is on page 7 of the policy, and none of these provisions in this section notably mention 6%. The first provision that is particularly of interest or particularly at issue states that the rates, note the plural rates of interest earned on the cash value, will be declared by us, meaning all states, or the issuer here, and the rates, again, rates there with the S in parentheses, of interest earned on the unloaned cash value will not be less than 4%. Now, here we've got the 4% being the base, as Judge Graves mentioned earlier, with respect to the policy actually stating this 4% interest as being the base, clearly here allowing all states to be the one who's setting this interest and that it can be varied. The second provision is also in this same section of the policy, and, again, this is setting a limit on the setting of interest, and it's a protection actually to the insured, and it states that the cash value will never be less than the guaranteed cash value shown on page 4. So both of these are limitations on setting the interest rate, and they are totally separate and apart from the provision that the plaintiffs look to as supposedly setting this guaranteed rate of interest. Now, if we flip over to page 4, what we have here is a court, of course, likely has noted well, is a table of guaranteed cash values. This is a table that has by the year and the guaranteed cash values out to the side of it. At the bottom of that table, we have these statements, two or three sentences that are discussing or describing how these values above are calculated. Now, this is clear because if you look at the language here, it's talking about the guaranteed net cash value assumes no outstanding loans. The basis of the guaranteed cash values is 7.75% interest the first year, 6% interest thereafter, and the maximum annual cost of insurance, and then it goes on a little further. But here we have... These are all the different components that have gone into figuring out these policy values up above. There's nothing ambiguous about this. This is clear on the basis of the policy language. Now, while Sentry proposes a construction that goes directly against or certainly against the plain language here in the policy, indeed turns the plain language on its head and says that the concept of the language on page 4 does not, quote, expressly allow all State to lower the interest rate to 4% and only infers it and allegedly conflicts with the explicit, quote, explicit statement that the interest rate would be 6% thereafter. So this conflicts with the plain meaning, as we've just gone over, and I'd like to discuss three ways that under Texas law this is shown to be the wrong reading of the policy. First of all, by reading this to state that there's guaranteed 6% interest, this renders the statement that all State can set the policy to 4% meaningless, which contravenes Texas law that states that you're supposed to construe a contract to take in each provision of the contract. Secondly, the plaintiff has a misguided... Yes, Your Honor. Isn't it a little bit confusing because it's way... You're talking about all the good interest up here and then at the very back. I mean, is it just... Your Honor, we would argue, no, it's not confusing, that it states under the cash value section clearly what goes into calculating the cash value. It's stating clearly under that table of guaranteed cash values, underneath all those figures, what goes into those constructions. And it's not just talking about interest rates as part of that calculation, but costs and other components. And so that if you're reading that, you're saying, ah, well, these are the different components that go into those calculations. The second way that under Texas law that this construction of the policy is not correct is the way that plaintiff puts forth ambiguity. As the Court likely noted repeatedly in their position below in their briefing, they stated the position that the contract, the policy, is unambiguous. And the Court actually noted that in its opinion, that that was their position. And the... Excuse me. They said that the contract unambiguously provided that 6% interest, and that is the reading, unambiguously. And yet what they stated was, but if the Court disagrees with us, then the contract's ambiguous. But as the Court well knows, that's not Texas law. What Texas law provides is that ambiguity does not arise merely because a party offers a conflicting interpretation, but only when the contract is actually susceptible to two or more reasonable interpretations. That's, again, under the Primo case, Texas Supreme Court, 2017. Now, a third way that their construction of the policy does not comply with Texas law is they're trying to import extrinsic evidence and use the rule that a contract is interpreted against the insurer to the calculation of whether the contract itself is ambiguous. But again, as I'm sure the Court well knows, the actual legal determination of whether a contract is ambiguous takes place before you look at extrinsic evidence or the rule of contraproferendum. As is stated in the CBI Industries case, Texas 1995, only after the contract is deemed to be ambiguous are either extrinsic evidence or the doctrine of contraproferendum applicable. So for all of these reasons, the concept that this is a policy that guarantees 6% absolutely fails. The plain meaning of the policy provides that this can be set at 4% and there was no breach. So the district court was correct. Counsel, I'm reluctant to go back to this, but what part specifically of 54B are you relying on for your assertion that the judge was free to revisit, reconsider his ruling on the motion to dismiss? Yes, Your Honor. Rule 54B states that an order may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. So there was a previous... Well, the way I read it, I'm looking at the last sentence. It says, Any order or other decision, however designated, that adjudicates fewer than all the claims or the rights. Yes, Your Honor. And so on record on Appeal 227, the judge ruled against us on our motion to dismiss, and considering that the interlocutory order, that the judge could come back and revise and look at again afresh and rule on it for this final ruling. I mean, I guess I hear that, but when I read a motion to dismiss, if that motion had been granted, then the whole case would have been over. Yes, Your Honor. But that's a ruling on all the claims. Yes, Your Honor. And this seems to be referring to a ruling on fewer than all the claims. It's one that can be revisited. Yes, Your Honor. Well, that is one reading. Our reading would be that he can revisit these type of interlocutory orders and change his mind with respect to those in the midst of the case. All right. Did you argue to us in the briefs before now that in fact what's before us is a resurrected ruling on your 12B1, 12B6, which was denied in March of 2021? Yes, Your Honor. We did argue, and we raised 54B and argued that this was already before the court. It was in the midst of our discussion. We raised that, then went into the fact that this could be considered a sua sponte dismissal, and this could also be considered a sua sponte motion to dismiss. But under all of those, excuse me, a sua sponte summary judgment, but we went through in detail how under all of those the standard has been met. You said resurrected this motion to dismiss at some point? I mean, you didn't have to use the word resurrected. No, I did not, Your Honor. I'm sorry. I thought you did ask that. Yeah, I used the word resurrected. Maybe I shouldn't have. No, no, no, I don't mind. No, I'm not criticizing that word, but did you say this was the same motion to dismiss? I don't remember that in the brief. I did not, in all candor, did not use the word reconsidered or resurrected, Your Honor, but we do refer to the fact that this is harkening back to him re-looking at this motion to dismiss and refer to the 54B that this is what he was actually considering. And if the judge, if Your Honor would like, I don't have the page right here in front of me, but I could, of course, find that page and submit it, but I'm sure you could. When the court denied your motion to dismiss back in March of 2021, was there a full opinion given or was it just a minute entry denied or what was the basis for the denial? I mean, 12B1, that would have been jurisdictional, so if you file a 12B6, fade the stated claim. So the court denied it in March of 2021. Was there a full opinion or was it just a minute entry? It was a paragraph and there was a sentence in there that did refer to ripeness, Your Honor. To what? To his decision on ripeness, whether this was ripe, whether he hadn't made a claim yet, he didn't have any damages that were before the court, and there were some claims. He also denied it based on the fact, I'm remembering, this isn't the exact language, based on the fact that he thought that there had been a change in the policy that Allstate was not allowed to make at that point. In other words, he thought at that point that there had been some amendment to the policy based on what we were talking about with the 4% and 6%, and therefore those were the two bases that were in that order, and again, that's my remembrance right now, and I'm glad to refresh that if the court would like. I'm like Judge Overholt. I didn't remember that argument, really. I caught myself reading it, but I didn't remember that coming up. And in candor to the court, that was not a pages and pages argument, but we did mention that in our briefing with respect to this revisiting the motion to dismiss in the 54B. Well, let's see. I had another question. I just . . . You asked if I'd like for you to just tell me where it is in the briefing. Perhaps you could do that by the time he's done with rebuttal. I'd be glad to hear it. All right. And I know you want to listen to rebuttal, but . . . Of course. Oh, I know what my question was. All right. In the original lawsuit, and I can ask counsel, in the original lawsuit which was filed in state court in December 2020, which was removed to federal court, in that original pleading or thereafter, did it include these DGPA claims in the complaint? Yes, Your Honor. Okay. I do stand corrected because it does say under rules of civil procedure 54B, the district court was free to reconsider and reverse its decision concerning the dismissal. That's on page 34 of the briefing. Okay. Thank you, Your Honor. All right. Thank you, counsel. Page . . . 34. Thank you, Your Honor. All right. Thank you. All right. Mr. . . . Mr. Esmar. You brought the little piece of paper up there the first time. You decided to bring the whole pad? If it pleases the court. Your Honors, first off, I think the court is pretty clear in their order and memorandum that it's not revisiting the motion to dismiss. The motion to dismiss was mainly based on jurisdiction and standing, neither of which were actually discussed in the memorandum and order. That's what I thought. Plus the language of the order is plainly discussing summary judgment language. So I kindly disagree with the counsel's stating that it's such. Now, regarding Rule 56F, explicitly states that there's a 10-day notice requirement for dismissal. Not to harp on that, but the courts have consistently taken that 10-day notice requirement and applied it to courts. Anyways, I do . . . We also disagree, obviously, with their assertion that it was unambiguous . . . allowed Allstate to lower it to 4%. In fact, the memorandum in order itself, it was so clear that . . . Let me read the language of itself on the order. The court stated, the lower court, Judge Hoyt, the rate of interest earned on the unloaned cash value, in brackets, so long as the unloaned cash value would not drop below 4% and so long as the policy's cash value meets or exceeds the corresponding values represented on the table of guaranteed values set out in the policy. First off, the court, the lower court, it was so clear that the 4% interest, that Allstate was allowed to lower it to that, that the court had to insert its own language inside the brackets, so long as brackets, by their very nature, is when the author is presenting its own language, saying this isn't part of the quoted material. I'm putting my own language into this quote to help either explain it or put my own opinion there. Second . . . That's what Texas law does, though, on . . . Well, Texas law . . . . . . because they work together. Texas law explicitly states that a court is not allowed to insert their own language under the rubric of interpretation or deciding whether a contract is ambiguous, so . . . But I thought you agreed with me earlier that that contract had a floor of 4%. You just said it didn't mean . . . It has two floors, Your Honor. It has two floors. It has a floor of 4%, which is from the boilerplate language, and a floor of 6%, which was the initial contracted for, that our client believed and was told that the contract would not be lower than. Our opinion, our stance, is that that 4% . . . But when you agree with me that 4% just doesn't . . . I thought you agreed that it really didn't mean what it said. You said that's something they just put in to, I guess, fool you? No, to abide by the insurance . . . to make sure that it qualifies as an insurance contract under 27 U.S.C. . . . Let me make sure I get that quote right. 26 U.S. 7702 for the insurance code to make sure that the policy actually qualifies as an insurance policy. The 6%, the only place in the actual contract that states that all state may vary or change the interest rate is the line in the contract on page ROA 150, page 7 of the contract. But the only place, like putting something in a contract only once is not good enough. You've got to say it six times before it takes? I don't understand why you say the only place, but you're admitting it's in the contract. Well, the reason I'm highlighting the only place is the only place they actually talk about it is the line that says that all states declare the interest rate. The only time that they declare the interest rate, though, is on page 4. Page 7 only says that it won't be lower than 4. Page 4 says that it will be 6%. That's the only place it's ever declared in the contract. And it's our opinion, thus, that it's unambiguous that the 6% was guaranteed, as our client believed it to be, and that the 4% was simply a catch-all safeguard against accidentally messing up and this isn't actually an insurance policy. That's our position, Your Honor, and we believe it's a reasonable interpretation of the contract. And that's all we've got. So I appreciate the time and the opportunity to argue our points, Your Honor. So you wish for us to say that there was a violation of the 10-day rule and send this back to the judge? Yes, Your Honor. We want to be able to argue our position on the noncontractual claims and we want to re-urge our arguments on the ambiguity of the contract. Which he already read. But we never did get a chance to reply to the noncontractual claims, Your Honor. So it goes back, you get the file, all this other stuff. The judge waits a couple of months and then rules. At least at that point we got a chance to make our arguments, Your Honor. Okay. All right. We appreciate the briefing and vigorous argument by counsel in this case. It's important and we take it that way and please don't take anything from my comments or any of ours. We're just trying to figure out what happened and the briefs are not always as illuminating as we'd like for them to be and counsel in the best position to tell us. So the case will be submitted and we'll decide it along with the others.